# CHARLESTON.

MALONE ELKHORN COAL COMPANY *v.* TILDESLEY COAL COMPANY.

Submitted February 20, 1924.    Decided June 24, 1924.

APPEAL AND ERROR—*Jury Finding on Conflicting Evidence Not Disturbed.*

> Where the defendant affirms and plaintiff denies that the matter in controversy has been adjusted and settled between the parties, and there is substantial conflict in the evidence relating to this issue, a finding of the jury thereon will not be set aside.

McGINNIS, JUDGE, absent.

Error to Circuit Court, Cabell County.

Action by the Malone Elkhorn Coal Company against the Tildesley Coal Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Simms & Staker,* for plaintiff in error.
*Deegan & Hall,* for defendant in error.

LITZ, JUDGE:

The defendant complains of a judgment on the verdict of the jury against it in favor of the plaintiff for the sum of $1,376.78 in an action of assumpsit for an alleged balance due and owing on account of coal shipments by the plaintiff to defendant.

The plaintiff is a coal mining corporation operating a mine in the State of Kentucky. Defendant is also a corporation engaged in the coal selling business, with its chief office at Cincinnati, Ohio. As agent of, or purchaser from, the plaintiff, defendant handled coal produced by plaintiff's mine from July, 1920, until about March, 1922. To plaintiff's suit for $1376.78 the defendant filed an offset of $2680.35. This offset, constituting the matter in dispute between the parties, involved a shipment from its mine of 20 cars of coal by the plaintiff at the direction of defendant in December, 1920. The defendant claims that it did not buy the coal but merely sold it to the Citizens Gas Company, at Indianapolis, Indiana, for plaintiff's account, with the express agreement on the part of plaintiff that it should not exceed 8 per centum in ash; and that the purchaser, claiming it contained a greater percentage of ash, refused to accept the shipment, necessitating its re-sale by defendant on the open market at a loss of $2680.35 from the contract price. The plaintiff, on the other hand, contends that there was an outright sale to the defendant, without specific agreement as to quality; but that in fact the coal was properly prepared and of merchantable quality.

In addition to the defendant's claim that it sold the coal for plaintiff's account, it also relies on an alleged settlement with the plaintiff in August, 1921, of the matter in dispute.

At the time of the shipment the defendant gave plaintiff credit therefor, at the price fixed at $3.15 per ton f. o. b. mines. After the coal was rejected by the Citizens Gas Company, and sold on the open market by the defendant at a loss of $2680.35, the defendant then charged this loss back to the plaintiff, notifying it by letter to that effect. The president of the plaintiff states that it refused to bear the loss and demanded payment by the defendant of the full

purchase price. The execution of a $10,500.00 note by the plaintiff to defendant is the basis of the alleged settlement. The defendant says that this note was given to take care of certain trade acceptances indorsed by it for the accommodation of plaintiff, and an open account between the parties including the item in question. The plaintiff, however, asserts that the execution of the note had no relation to the matter in controversy, and defendant concedes that by reason of certain outstanding matters that were not taken into account the parties did not strike a final balance.

Defendant relies upon the following assignments of error:

(1) The court improperly instructed the jury on behalf of plaintiff, over defendant's objection that, if prior to the sale of the 20 cars of coal the defendant had purchased from the plaintiff other coal from the same mine, and the defendant was acquainted with the character and grade of coal produced by plaintiff's mine, and the coal in question was properly cleaned and prepared, then the fact that upon analysis it was found to be high in ash, sulphur or other elements, is immaterial, unless the plaintiff guaranteed it to be of a particular analysis.

This instruction is criticized as depriving the defendant of the defense that the coal was unmerchantable. There is no claim that the coal was not merchantable, or of as good quality as the usual product from plaintiff's mine. It is shown to have been mined and prepared with especial care. In fact, the defendant admits that it brought the best price on the market in competition with other coals. Besides, there is no competent evidence that it contained more than 8 per cent. ash. The sudden slump in coal prices doubtless accounts for the refusal of the gas company to accept the shipment. The fact that the price obtained for this coal was less than the freight charges shows the unfavorable market conditions.

(2) That there was a settlement and adjustment between the parties which cannot be set aside except for fraud, accident. or mistake. The plaintiff contends that the note for $10,500.00 was executed merely as collateral to secure the defendant as accommodation indorser for plaintiff on trade

acceptances, discounted by the plaintiff at The Fifth-Third National Bank of Cincinnati, and not as evidence of any indebtedness of the former to the latter.

The defendant admits that the note was executed merely as collateral. In its notice of offset the defendant files a complete statement from its books showing the numerous transactions between it and plaintiff involving more than $120,-000.00, but disclosing no settlement or account stated between the parties at any time. If the claim was merged in the note by account stated, then the unpaid balance on the note, if any, would be the basis for the offset. The record does not disclose what became of the note or that the defendant ever set up any claim thereunder.

The question of settlement between the parties being an issue of fact, involving a substantial conflict in the evidence, the finding of the jury thereon will not be disturbed.

We therefore affirm the judgment of the circuit court.

*Affirmed.*